REDACTED

**LANKLER SIFFERT & WOHL LLP**

ATTORNEYS AT LAW

33ʀᴅ FLOOR
500 FIFTH AVENUE
NEW YORK, N. Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

September 5, 2012

**BY HAND DELIVERY**

Honorable Frank Maas
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

> Re:     **United States v. Shepard Fairey, 12-CR-180 (FM)**

Dear Judge Maas:

On behalf of Shepard Fairey, we respectfully submit this letter in reply to the government's September 2ⁿᵈ letter.  The government rests its arguments on an inaccurate view of the facts, speculation, a distorted interpretation of Judge Hellerstein's decision not to impose a formal sanction in the civil case, and a legal theory at odds with Supreme Court precedent and the plain reading of the contempt statute Shepard was charged with violating.

### A.  A Prison Sentence Is Not Appropriate Here

The government states that the "unique facts of this case" suggest that a prison sentence is appropriate.  Gov't Ltr. at 6, 8.  However, the government presents no information for the Court to conclude that Shepard's case is the "unique" civil spoliation case deserving incarceration.

The government rests much of its argument on its incorrect contention that Shepard did not suffer a "penalty" or "sanction" in the civil case.  The government is wrong that there was no penalty or sanction in the civil case.  ███████████████

███████████████████████████████████████████████████████████████████

The government omits this fact entirely and instead selectively quotes a November 10, 2009 conference in which Judge Hellerstein stated that he did not want the spoliation issue "wrapped into any settlement that [he approves]," Gov't Ltr. at 8

LANKLER SIFFERT & WOHL LLP

The Honorable Frank Maas
September 5, 2012
Page 2

(quoting Nov. 10 Tr. at 13).  About six months after the quote upon which the
government focuses, however, Judge Hellerstein also encouraged settlement:

> I have a feeling, although it is not more than a feeling — and, certainly, it
> would be subject to evaluation in light of the merits that are shown to me
> — that, whether it's sooner or later, The Associated Press is going to win,
> and that means that Fairey and Garcia will not have copyrights nor
> permission to use or even a license to use.
>
> I'm wondering if it is in everyone's interest to recognize that point early
> on and dispense with litigation over sanctions.

Fairey v. The Associated Press, No. 09 Civ. 1123 (AKH), May 28, 2010 Tr. at 2-
3.  Ultimately, Judge Hellerstein *sua sponte* dismissed the case once the settlement
agreement was submitted to him.  The government implies that Judge Hellerstein
essentially forgot about the spoliation when he approved the settlement.  But that
suggestion belies reality, given the significance that the spoliation took on in the
litigation.  In fact, Shepard's actions so weakened his case that he settled what he
believed was a meritorious matter on unfavorable terms that included "sanctions."  See
Fairey Sent. Mem., Exh. 30 (Letter from Shepard's replacement counsel) (discussing
settlement).

In the end, the government argues that because Judge Hellerstein did not formally
impose sanctions, this court should fill the void by sentencing Shepard to a term of
incarceration.  This argument defies logic.  The government's speculative theory is not
reason for a prison term, given that the terms of the settlement agreement include
sanctions and given that there was no showing that the AP suffered lasting prejudice.

The government's contention that the "settlement agreement itself distorts to
some extent the truth-finding function of the court" is itself a distortion.  Gov't Ltr. at 9.
The government is effectively arguing that this Court should not give weight to the
█████████████████████████████████████████████████████████████
█████████ would not seek further civil or criminal sanction against Shepard.  Id.  The
government argues that this clause "virtually ties the hands of the AP" by precluding it
from stating that "a prison sentence is the appropriate sanction" if it believes that to be
true.  Id.  But Shepard never had the ability to force a sophisticated entity like the AP —
the largest news organization in the world — to enter into terms to which it did not
consent.  If it was important to the AP to seek further punishment, it would have
preserved that right for itself.  To the extent that the government suggests that the AP
wants Shepard to serve a prison sentence but has been unfairly muffled, its suggestion

LANKLER SIFFERT & WOHL LLP

The Honorable Frank Maas
September 5, 2012
Page 3

should be disregarded; the AP stipulated in a document presented to Judge Hellerstein that it did not see a need to seek further punishment.

**Shepard's Actions Were Not as Severe as Other Spoliators**.  To our knowledge, sentencing Shepard to a term of incarceration would result in the first such sentence for a party involved in civil litigation who committed spoliation.  In its letter, the government takes issue with our argument that, in fashioning a sentence, the court should compare Shepard to other defendants who have spoliated evidence in civil cases.  Gov't Ltr. at 10.  The government contends that Shepard should be compared to defendants "who are prosecuted for crimes, by whatever name, that involve obstruction of justice . . ." and cites to U.S. Sentencing Commission statistics showing that in 2010, at least ten defendants were prosecuted for destroying documents.  Id. at 10-11 n.1.  But we do not contend that obstruction of justice prosecutions never occur.  Rather, we have found no cases in which a party to a civil case was prosecuted for spoliation.  The government's letter cites none and the government's statistics shed no light on whether any of the ten defendants charged with destruction of documents in 2010 destroyed documents in a civil litigation.

The government tries to differentiate this case from what it calls the typical civil spoliation case, arguing without authority that the typical case involves the "mere failure to preserve documents."  Gov't Ltr. at 6.  But in our sentencing memorandum, we cited a string of cases in which the spoliation involved was more egregious than the spoliation that occurred here.  See Fairey Sent. Mem. at 35-36, and n.26.  The government ignores these cases, but "submits" — again, without authority — that the reason other spoliation cases have not be brought is because the "conduct has not come to the attention of prosecutors or because the conduct was not as bad as the defendant's." Gov't Ltr. at 10

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

**Shepard Fully Accepted Responsibility and Agreed to Restitution Before Any Charge Was Brought**.  The government casts Shepard's sentencing memorandum as an effort to minimize his conduct.  It is not.  The defendant's sentencing memorandum discusses in detail the conduct in which Shepard engaged.  See, e.g., Fairey Sent. Mem. at 7 ("Shepard created files in order to make it appear as if he had referenced the Clooney Photo and not the Obama Photo"); id. ("He then deleted the original electronic documents."); id. at 8 ("[H]e continued to tell his lawyers and others that he had used the Clooney Photo as his reference"); id. (he "pointed his lawyers to two people who he knew believed (albeit mistakenly) that Shepard had used the Clooney Photo because they had discussed it with him before he realized his mistake").  Shepard also detailed what he

LANKLER SIFFERT & WOHL LLP

The Honorable Frank Maas
September 5, 2012
Page 4

had done to the Probation Department.  PSR at ¶ 44 ("He explained in detail the steps he took to disguise his actions.").  Moreover, the sentencing memorandum does not suggest that "somehow, one day" Shepard decided to come clean, Gov't Ltr at 11, but explains Shepard's efforts to correct his conduct once it was revealed.  See Fairey Sent. Mem. at 8-11.  Shepard took full responsibility at the time, and expressed his remorse over and over again — including during his interview with the Probation Department.  PSR at ¶ 44 ("Fairey expressed his shame and remorse for his actions.").  Shepard always has accepted full responsibility and understands the seriousness of his conduct.  The letters from those who know him best make this clear.  See, e.g., Letter from Antonino D'Ambrosio, submitted to the Court on Sept. 5, 2012 (describing Shepard's "sincere contrition").

The government also states that the conduct had "serious financial consequences for the AP" and asserts that this is a reason for a prison sentence.  Gov't Ltr. at 7.  But just pages later the government concedes that "it cannot be determined that the AP has suffered an uncompensated loss."  Gov't Ltr. at 13.  ███████████████████████ ████████████████████████

**Shepard Did Not Know the Complaint Was in Error Before it Was Filed**.  Finally, the government argues that prison is appropriate because Shepard was "reckless" when he filed the complaint against the AP.  Gov't Ltr. at 12.  The government is careful not to say that Shepard "knowingly" filed a false document.  Id.  This is for good reason — there is no evidence that Shepard knew.  All of the evidence — much of it ignored by the government in its letter — points towards the fact that Shepard made an honest mistake at the time the complaint was filed.  See Fairey Sent. Mem. at 4-5.

### B.  The Court Should Not Impose A Fine Of More Than $1,000

The government makes two legally incorrect assertions about the fine available in this case.  Both should be dismissed.

### 1.  The Supreme Court's Decision in <u>Southern Union</u> Requires a Jury Determination Before Any Substantial Fine Can Be Imposed

The government claims that the Court can impose a fine up to ███████████  This claim is at odds with Supreme Court precedent, which the government failed to cite.

In <u>Southern Union Co. v. United States</u>, the Supreme Court held that <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) applies to non-petty criminal fines in both felony and misdemeanor cases.  132 S. Ct. 2344, 2357 (2012) ("[T]he relevant question is the significance of the fine from the perspective of the Sixth Amendment's jury trial

LANKLER SIFFERT & WOHL LLP

The Honorable Frank Maas
September 5, 2012
Page 5

guarantee," and the Apprendi rule applies "[w]here a fine is substantial." (citing Mine Workers v. Bagwell, 512 U.S. 821 (1994) (a civil contempt fine case))). Thus, the Court cannot impose a "substantial" fine on Shepard without a jury trial to determine the extent of the loss. Id. In Southern Union, the Court identified the "twice the gain or loss" rule upon which the government now relies as a particular statute that could trigger the jury trial guarantee, because — as here — the loss amount and the "doubling" provision can lead to a "substantial" number. The Court did not define a "substantial" fine by a dollar amount, but instead gave guidance to courts determining whether Apprendi applies, making clear that the amount at issue here, especially when imposed on an individual, is "substantial."[1] Id. at 2351.

The government ignores Southern Union.[2] Instead, it announces, without providing the Court with any evidence, that the AP's losses were ███████ and that this results in a potential fine, pursuant to the doubling provision of 18 U.S.C. § 3571, of ███████. The government relies on Shepard's plea allocution as "proof" of the AP's losses, but the plea allocution does not provide such proof.

During Shepard's plea allocution, Shepard stated that he believed the settlement ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████

The AP has never claimed that its losses were ███████. Until its September 2nd letter to this Court, neither had the government. In an August 22nd email to the Probation Department, the government made similar arguments to those it now presents to the Court. But in that forum, the government recognized that the ███████

---

[1] Southern Union provides an example of a $10,000 fine on a labor union as an example of a fine that that did not trigger Apprendi, and a $52 million fine on that same union that did. 132 S. Ct. at 2351. If a $52 million fine is substantial for a labor union, certainly a potential fine of $3.2 million on an individual is too. Indeed, the Supreme Court cautioned that "where the defendant is an individual, a large fine may engender a significant infringement of personal freedom." Id. at 2352 (internal quotation marks omitted). See also Lightfoot v. State, No. CR-11-0376, 2012 WL 3641413, at *8 (Al. Crim. App. 2012) (applying Southern Union and finding that a fine increase of $25,000 upon an individual violated Apprendi and remanding for resentence).

[2] The application of Apprendi to fines should be no surprise to the government, as it has been the law of the Second Circuit for two years. See United States v. Pfaff, 619 F.3d 172, 175 (2d Cir. 2010) (per curiam) ("[I]t is the clear implication of Apprendi and Blakely that when a jury does not make a pecuniary gain or loss finding, [18 U.S.C.] § 3571's default statutory maximums cap the amount a district court may fine the defendant.").

LANKLER SIFFERT & WOHL LLP

The Honorable Frank Maas
September 5, 2012
Page 6

██████████████████, and claimed instead — again without support — that the
losses were "at least ████████." E-mail from Daniel Levy, AUSA, to the Probation
Department (Aug. 22, 2012 18:25 EST).

In fact, there has never been any attempt to determine the fees the AP expended as
a result of the spoliation, and its exact losses (or even a rough ballpark figure) remain
unknown (██████████████████). When Shepard offered to pay the exact number
during the course of settlement negotiations, the AP refused because, as we understand it,
it did not want a third party to review its bills.

Without knowing the AP's losses, the Court cannot fine Shepard through the
alternative fine provision of Section 3571 because that section relies on a "doubling" of
the losses and it is impossible to double an unknown number.[3]

This is exactly the problem <u>Southern Union</u> seeks to address.   The AP's losses
are unknown and require fact finding to determine them: because they may result in a
"substantial" fine, a jury determination is required.   Under Section 3571(d) — the section
on which the government relies — the Court should not apply the doubling provision if
doing so "would unduly complicate or prolong the sentencing process."   Determining the
extent of the AP's relevant legal bills (which to date have never been produced) — would
complicate and prolong the sentencing.   The government's request that the Court find that
the AP's losses were ████████, based entirely on the government's "say so," ignores
both <u>Southern Union</u> and the dictates of Section 3571(d), and should be summarily
rejected.

### 2.  No Fine Over $1,000 Can Be Paid to the United States

The government suggests that the Court can disregard the plain language of 18
U.S.C. § 402 and order a fine over $1,000 to be paid to the government.   Gov't Ltr. at
13.  But the government ignores the fact that Section 402 states that "*in no case*" shall
any fine over $1,000 levied against an individual be paid to the United States.

The government labors to overcome Section 402's plain language that "in no
case" can a fine over $1,000 be paid to the United States by suggesting that such a case
can exist if the Court invokes the "doubling" provision of Section 3571(d).   While
Section 3571(d) allows the Court to fine the defendant twice the AP's losses — subject to
the requirements of <u>Southern Union</u>, discussed above — Section 402 makes clear that

---

[3] As the AP stated it was never deceived and filed no briefing on the subject,  it may well be that an
objective review of the AP's legal fees shows that its losses were substantially lower than the ████████
the government claims today█  By ████████████████████████████████████████

LANKLER SIFFERT & WOHL LLP

The Honorable Frank Maas
September 5, 2012
Page 7

such a fine must be "apportioned" between the government and the "complainant or other party injured," and any fine over $1,000 must be paid to that injured party.  18 U.S.C. § 402.

Any fine over $1,000 payable to the United States would be unlawful.  See United States v. De Simone, 267 F.2d 741, 746 n.9 (2d Cir. 1959) (noting that imposition of $1,500 fine would have been "a direct violation" of Section 402's "mandate that 'in no case shall the fine to be paid to the United States exceed . . . the sum of $1,000'").  Meanwhile, any fine over $1,000 that is apportioned to the AP would result in a windfall to it, because ██████████████████████████████████ the government acknowledges, "it cannot be determined that the AP has suffered an uncompensated loss."  Gov't Ltr. at 13. ███████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████

### C.  The Government's Objections to the PSR Should Be Rejected

The government spends nearly half of its sentencing brief setting forth irrelevant and trivial objections to the Presentence Report ("PSR").  The government previously made all of these objections directly to the Probation Department and the Probation Department deemed it unnecessary to include them in the PSR.  Each of the government's objections should be rejected:

- The government's suggestion that Shepard did not hand illustrate the Hope Poster is both inaccurate and irrelevant.[4]

- The government's reference to events that it says occurred during the October 2009 mediation is a violation of the mediation privilege and Federal Rule of Evidence 408.  See, e.g., In re Teligent, 417 B.R. 197 (S.D.N.Y. 2009) (discussing the mediation privilege and confidentiality), aff'd, No. 09-CV-9674, 2010 WL 2034509 (S.D.N.Y. May 13, 2010), aff'd, 640 F.3d 53 (2d Cir. 2011).  The mediation privilege cannot be unilaterally waived by any party.  The fact that the government sought confidential information and then presented that confidential information to the Court in a public sentencing letter is improper, particularly when the parties remain bound by confidentiality.  In any event, we

---

[4] The government fails to inform the court that, to the extent that the AP claimed that Shepard did not illustrate the poster, that contention was put to rest through the deposition testimony of the AP's own experts.  Deposition of Michael Essl, Nov. 22, 2010, at 141-152 (AP's expert describing ways in which his computer generated replica of the Hope poster was different than the original hand cut version created by Shepard, and how the lines in his digital recreation were, among other things, "more round").

LANKLER SIFFERT & WOHL LLP

The Honorable Frank Maas
September 5, 2012
Page 8

learned what occurred during the mediation from a lawyer who was present at the mediation. The government's story is wildly inaccurate, misleading, and does not support the government's argument.[5]

- The government's suggestion that Shepard's unintentional profits from the Hope Poster exceeded $150,000 is based on a flawed expert report and is irrelevant.

- Likewise, the government's effort to attribute all of the increased profits earned by Shepard's entities to the Hope Poster is speculative and inaccurate.

- 

**D. The Government has had Substantial Time to Prepare its Response to Any Argument Regarding Shepard's Medical Condition**

Finally, the government suggests that it will respond at sentencing to our arguments regarding Shepard's Type I diabetic condition. But we discussed the importance of Shepard's medical condition with the government on July 24th. The government should be precluded from offering such rebuttal at sentencing because it will deprive the defendant an opportunity to respond.

***

We respectfully ask that the Court reject the government's request for incarceration and impose a non-custodial sentence.

Respectfully submitted,

Daniel M. Gitner

cc:  AUSA Daniel Levy

---

[5] We are happy to share what happened during the mediation *in camera* with the Court.